[Crim. No. 312.  Department Two.—January 4, 1898.]

## THE PEOPLE, Respondent, v. TILLIO LUCHETTI, Appellant.

CRIMINAL LAW—LARCENY—EVIDENCE—RECENT POSSESSION OF STOLEN COW—
    EXPLANATION—QUESTION FOR JURY.—The possession by the defendant on
    the morning after the theft of a stolen cow, which the defendant was
    accused of stealing, is *prima facie* evidence of guilty possession, and
    is a circumstance, to be taken in connection with other corroborating
    circumstances, tending to show guilt of the larceny alleged, unless
    satisfactorily explained; and where the defendant undertook to ex-

plain the possession as having been transferred to him by another person, under circumstances detailed by him, and it could not be said that his explanation was so clearly and evidently true that the jury could not find against it except under the influence of passion or prejudice, but there was evidence from which they might rightly conclude that the explanation was fabricated, the question whether his explanation was true and reasonable or fabricated was a question for the jury to determine, and their verdict of guilty cannot be disturbed on the ground that the inference of guilt was removed by the explanation given by the defendant of the circumstances attending his possession.

ID.—SALE OF COW TO BUTCHER—EVIDENCE OF PREVIOUS PROPOSAL TO SELL—ABSENCE OF REBUTTAL.—It appearing that the stolen cow was sold by the defendant to a butcher on the morning after the theft, the testimony of the butcher that about a week previously the defendant asked the butcher if he did not wish to buy a cow, tended, in some degree, to render improbable the defendant's explanation of his possession of the cow sold, and is not too remote to be inadmissible; and it being in the power of the defendant to rebut such inference if not correct, the failure of the defendant to offer evidence to show that he had in his possession another cow which he was proposing to sell the week previous added to the improbability of his testimony.

ID.—INSTRUCTIONS—POSSESSION OF STOLEN PROPERTY—"GUILTY CIRCUMSTANCE."—The use of the words "guilty circumstance," instead of the words "a circumstance tending to show guilt," in an instruction as to the effect of the unexplained possession of stolen property soon after the taking, could not be misleading to the jury, where other instructions on that subject were such as must have corrected any erroneous impression made upon the minds of the jurors.

ID.—MODIFICATION OF INSTRUCTION—DISCREDITING OF FALSE WITNESS.—Where the defendant requested an instruction substantially covering the provision of section 2061, subdivision 3, of the Code of Civil Procedure, that "a witness false in one part of his testimony is to be distrusted in others," a modification of the instruction by the word "willfully" before the word "false" did not render the instruction erroneous, nor change the effect of the instruction as offered.

ID.—INSTRUCTION TAKING CASE FROM JURY—IMPROPER REQUEST.—Where there was evidence sufficient to sustain a verdict of guilty of larceny, an instruction requested that there was no evidence that the defendant participated in the actual stealing of the cow, and that the evidence only showed that defendant sold property alleged to have been stolen, and that defendant could not be convicted upon that evidence, would have taken the case from the jury, and was properly refused.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—LACK OF DILIGENCE.—A new trial will not be granted for newly-discovered evidence, where it appears that what the witness could have testified to was well known to the defendant before the trial, and no steps were taken to secure his attendance at the trial, and the lack of diligence in that

regard was such that the defendant, though stating to the court a desire for his evidence, did not insist upon a postponement to secure it.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion.

Appel & Whitney, and A. M. Niles, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

HAYNES, C.—Appellant was convicted of grand larceny, and, his motion for a new trial having been denied, he was sentenced to imprisonment for the term of five years. This appeal is from the judgment and the order denying a new trial. All the questions in the case are presented by the motion for a new trial.

The evidence tended to show that the cow (the property alleged to have been stolen) was, by the owner, securely tied to a tree in the owner's lot, in the city of Los Angeles, with a chain and halter, on the evening of October 28th, and was missed the next morning, and about 9 o'clock that morning was sold to a butcher in the same city by the defendant. No question is made as to a larceny having been committed by some one, and that the defendant sold the cow to the butcher is admitted.

The defendant testified in his own behalf, in substance, that he left Monrovia about 1 o'clock in the morning to come to Los Angeles to see his sweetheart, using his stepfather's horse and wagon; that about 5 o'clock he overtook Joe Riverio, on New Main street, leading the cow that was sold to Mr. Sentous, the butcher; that Riverio spoke to him about selling the cow in the country; that he asked Riverio to ride, that Riverio got on the wagon and the cow gave a jerk and broke the hind wheel off the wagon; that Riverio said, "Now I broke the wheel off your wagon, you can sell the cow and get five dollars and fix your wheel"; that he saw Valencia, an officer, and spoke to him; that he was then leading his horse with the harness on, and "the man was behind me"; that he took his horse to the Mariposa

barn and about 9 o'clock went to the Roma hotel "to meet this fellow" to get money to fix his wheel, and he told him to go and sell the cow, and that he then sold the cow to Mr. Sentous; that when he first went to the butcher shop Riverio was with him, but not when he went the second time and sold the cow; that he sold the cow in Riverio's name, and signed Riverio's name to the bill of sale because he told him to sell the cow.

Upon cross-examination, he testified that he knew Riverio well, that the last time he saw him was the day he sold the cow; that Riverio used to run a tamale stand in Los Angeles; that he did not ask him where he got the cow; that he said he was working in San Gabriel and they gave him the cow for his work.

It does not appear that the defendant made or caused to be made any effort to procure the presence or arrest of Riverio. The policeman, Valencia, whom he said he saw and spoke to on the street between 4 and 5 o'clock in the morning, while he was leading his horse and Riverio the cow, was not examined as a witness. He was subpoenaed by the prosecution, was present at the trial in the morning, but was permitted by the officer to go away with the promise that if he should be needed he would be sent for. It does not appear that he was informed by any one that the defendant desired his presence or intended to call him as a witness. When about to close the evidence on the part of the defendant, his attorney said: "I would like to put on Mr. Valencia, but if the court thinks I have not shown diligence, I cannot insist upon it"; and the case was closed without Valencia's presence, and without any request for delay, or any further effort to secure his testimony.

Several points were made for reversal, but these will be noticed in a different order from that in which they are presented by appellant.

1. It is contended that the evidence is insufficient to justify the verdict. The evidence in this case is wholly circumstantial. No one saw the cow taken from the owner's lot. It was found in defendant's possession early the next morning, and hence the question is presented as to the effect to be given to such possession and the defendant's explanation of the fact of his possession.

It is said by Greenleaf: "As men generally own the personal

property they possess, proof of possession is presumptive proof
of ownership.   But possession of the fruits of crime recently
after its commission, is *prima facie* evidence of guilty posses-
sion."   (1 Greenleaf on Evidence, sec 34.)

But there may be "guilty possession" in one who did not com-
mit the larceny, as in the case of the receiver of stolen goods,
knowing them to have been stolen, or there may be an innocent
possessor of stolen goods, as, in this case, the butcher, who pur-
chased the cow, and who, the circumstances all show, could have
been neither the thief nor the guilty receiver of stolen goods.

The learned author above quoted further says: "In the next
place, in order to justify the inference of guilt from the pos-
session of the instruments or fruits of crime, it is important
that it be a recent possession, or so soon after the commission
of the crime as to be at first view not perfectly consistent with
innocence.   In the case of larceny, the nature of the goods is
material to be considered; since, if they are such as pass readily
from hand to hand, the possession, to authorize any suspicion of
guilt, ought to be much more recent than though they were of
a kind that circulates more slowly, or is rarely transmitted."
The author then cites a case where the prisoner was held to ac-
count for his possession of goods stolen two months before they
were found in his possession, and other cases of property of a
different character found in possession of the accused after a
longer interval where an acquittal was directed, and adds:
"But in other cases the whole matter has properly been left at
large to the jury, it being their province to consider what weight,
if any, ought to be given to the evidence."   (3 Greenleaf on Evi-
dence, sec. 32.)

Appellant contends that having given a reasonable account of
the circumstances attending his possession of the cow, that it
removes the inference of guilt, and that therefore the verdict
should have been in his favor.   But whether the account he gave
was either true or reasonable was for the jury to determine, and
in such case we cannot disturb the verdict, unless we can say
that his explanation of his possession was so clearly and evi-
dently true that the opposite conclusion could only be reached
by a jury under the influence of passion or prejudice.   We think
the jury rightly concluded that his story was fabricated, and,

therefore, that he was guilty of the larceny. In this connection and as tending strongly to justify this conclusion of the jury, we may add to the facts already stated the testimony of Mr. Sentous, a witness called for the prosecution, who testified that about a week before he bought the cow the defendant came and asked if he wanted to buy a fat cow, which he said was on Pasadena avenue, five or six miles away; that Sentous replied he would not go so far to see it, but "you bring the cow, and if it suits me I will buy it." If the defendant had made this inquiry the day before he brought the stolen cow to Mr. Sentous it would have been cogent evidence that he, and not another, had committed the larceny; and, while the lapse of a week would somewhat weaken its force, it clearly tends, in the absence of any explanation, to connect him with the taking. It would very naturally lead Mr. Sentous to suppose that the cow he brought and sold to him was the one about which he had spoken a week before, and, if so, we do not see why it should not properly have the same effect upon the jury. If he owned a cow on Pasadena avenue, five or six miles from the city, it was in his power to show that fact, and thus remove the inference; and his failure to do so greatly added to the improbability of his testimony as to the circumstances under which he obtained possession of the stolen property.

In this connection, we may notice defendant's objection to the said testimony of Mr. Sentous, which was based upon the ground that it occurred prior to the larceny. This objection was properly overruled for reasons above stated. The time was not so remote as to make it inadmissible.

2. At the request of the prosecution, the court gave an instruction in which the following language was used: "The mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction; it is merely a guilty circumstance which, taken in connection with other testimony, is to determine the question of guilt."

The objection made by appellant to this instruction is pointed to the expression, "It is merely a guilty circumstance." It is contended that the court thereby decided for the jury a question of fact.

In other parts of said instruction the jury were told that such possession "is a circumstance tending in some degree to show guilt, but not sufficient, standing alone and unsupported by other evidence, to warrant you in finding him guilty." No objection is taken to this part of said instruction, and we see no material distinction between the expressions "a guilty circumstance" and "a circumstance tending in some degree to show guilt." It has never been supposed that the possession of property recently stolen was of itself evidence of innocence; but, on the contrary, the average juror would, if uninstructed, at once assume from such unexplained possession that the possessor was the thief, and therefore such instructions are favorable to the accused, though in whatever form they may be given there is a necessary implication that recent and unexplained possession does tend to prove guilt. This implication clearly appears in an instruction given to the jury at the request of the defendant, "that the mere possession of stolen property is not sufficient to convict a person of stealing the same. There must be other corroborating circumstances in the case, satisfying the minds of the jury beyond a reasonable doubt that the accused did some act or thing essential to the commission of the offense." If it were conceded that the use of the words "guilty circumstance" were objectionable, as used by the court, this subsequent instruction must have corrected any erroneous impression made upon the minds of the jurors.

3. Section 2061, subdivision 3, of the Code of Civil Procedure is as follows: "A witness false in one part of his testimony is to be distrusted in others." The defendant requested an instruction substantially covering this provision of the code. The court modified it by inserting the word "willfully" before the word "false," and it is contended that the court erred in doing so. It is argued that "one is not more worthy of credit who either inadvertently, negligently, or ignorantly testifies falsely than he would be if he testifies willfully so." In *People v. Sprague,* 53 Cal. 493, the defendant requested an instruction in the exact words of the statute above quoted, and the court modified it, as was done here, by inserting the word "willfully" in the same place. The court said: "The word 'false' is not the equivalent of 'mistake,' as contended for by defend-

ant's counsel; the word 'willfully' did not change the effect of the instruction as offered." (See, also, *People v. Treadwell*, 69 Cal. 238; *People v. Flynn*, 73 Cal. 515; *People v. Clark*, 84 Cal. 582, 583.)

4. The defendant requested that the following instruction be given to the jury: "The court instructs the jury that there is no evidence that the defendant participated in the actual stealing of the cow. The evidence in this case only shows that the defendant sold some property alleged to have been stolen, and upon this evidence you cannot convict the defendant alone."

The court did not err in refusing it. It would have taken the case from the jury and compelled an acquittal, and we have already held that there was evidence sufficient to sustain the verdict.

5. It is also insisted that the court should have granted defendant's motion for a new trial. This motion was based upon a statement of the case and an affidavit made by Noberto Valencia, the police officer whom the defendant testified he saw and spoke to on the street while he was leading the horse and Riverio was leading the cow.

The evidence that was heard upon the trial being sufficient to justify the verdict, as we have already seen, it only remains to consider whether the affidavit of Valencia required the court in the proper exercise of its discretion to grant the motion.

The facts stated in this affidavit corroborated the testimony of the defendant as to the fact of meeting him and speaking with him on the street, and that another man was leading the cow, and were, therefore, material. Valencia was present at the trial as a witness for the prosecution, but, as appears from his affidavit, toward evening absented himself, with the knowledge of the bailiff, who told him that if he should be wanted he would be sent for, and that he did not know that the defendant wanted him. What Valencia could have testified to was well known to defendant, and his evidence is not therefore newly discovered; but for some reason no steps were taken to secure his attendance as a witness for the defendant. When the evidence on the part of the defendant was about to be closed, his counsel said to the court: "I would like to put on Mr. Valencia, but if the court thinks I have not shown diligence, I cannot insist upon it." It

must be clear that if his lack of diligence was such that he could not ask the court for a little delay to procure his presence and testimony, the affidavit could not justify the court in granting a new trial. Besides, we do not think his testimony could have properly changed the result.

Some other exceptions were taken during the trial, but we find none requiring notice.

The judgment and order appealed from should be affirmed.

Searls, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Henshaw, J., McFarland, J., Temple, J.