(79 South. 621)

COHEN v. STATE.   (6 Div. 407.)

(Court of Appeals of Alabama.   June 29, 1918.)

1. RECEIVING STOLEN GOODS ⏤8(3)—BURDEN OF PROOF.

To establish the corpus delicti in prosecution under Code 1907, § 7329, the state must prove not only that there was a theft of the goods, but that defendant bought, received, or concealed the same knowing that they had been stolen and that he had no intent to restore them to the owner.

2. CRIMINAL LAW ⏤561(1) — DEGREE OF PROOF—REASONABLE DOUBT.

Before a defendant can legally be convicted the state must prove every material ingredient of the offense beyond a reasonable doubt.

3. RECEIVING STOLEN GOODS ⏤9(1)—EVIDENCE—SUFFICIENCY.

In prosecution under Code 1907, § 7329, for receiving or concealing certain brass knowing it to have been stolen, *held*, defendant was entitled to affirmative charge.

Brown, P. J., dissenting.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Lewis Cohen, alias, etc., was convicted of buying, receiving, or concealing certain brass knowing it to have been stolen and not having the intent to restore it to the owner, and appeals. Reversed and remanded.

Weatherly, Deedmeyer & Birch and Samuel B. Stern, all of Birmingham, for appellant. F. Loyd Tate, Atty. Gen., Emmett S. Thigpen, Asst. Atty. Gen., and Jos. R. Tate, of Birmingham, for the State.

SAMFORD, J. The indictment is in the Code form, and is not subject to the demurrer. There are many exceptions to the various rulings of the court upon questions of evidence, but, as we view this case, it will not be necessary to pass upon them separately.

[1, 2] In order to prove the corpus delicti in a case under this statute (Code 1907, § 7329), there must be evidence not only of a theft of the goods, but a buying, receiving, or concealing of such stolen goods, with a knowledge that they have been stolen, and not having the intent to restore them to the owner. It is a rule so well settled as not to require citation of authority that before a defendant can legally be convicted of crime the state must prove every material ingredient of the offense beyond a reasonable doubt, and before a jury would be warranted in returning a verdict of guilty, there must be such proof as to convince them beyond a reasonable doubt as to every material ingredient of the offense charged.

[3] The defendant was a member of a partnership in Birmingham, engaged in the business of buying and selling junk (including brass). The Southern Railway had some brass, called journal brasses, stolen from its wareroom in Birmingham in November, 1916. Shortly after the theft these brasses, or brasses of a similar kind, were found in barrels with other junk in the storehouse of the firm of which the defendant was a member. These barrels were found in the middle of the storehouse, about 80 feet from the street with a bag fastened over each barrel, as if they had just been shipped in or were being shipped out. There was no evidence that the defendant had ever seen in the barrels or ever had seen the barrels, or that the brasses had been bought as such by the firm. It was in evidence without dispute that the defendant attended to the office work of the firm and managed the financing of the business, which was a large business, covering purchases from several states; that the other partner did the buying, and a clerk received, classed, and checked all goods purchased, and that the clerk received the barrels in which these brasses were found; that they were shipped to the firm from Atlanta, Ga., and Tallahassee, Fla. The bills of lading and invoices were introduced describing shipments which included barrels of brass, and it was testified to, and not denied, that the defendant never in fact saw the barrels in which the brasses were, and never knew that in the barrels there were brasses of the description of the brasses set out in the indictment. The defendant proved a good character, which was not denied.

The humane provision of the law is that every man is presumed to be innocent until his guilt is established by proof, and while the possession of stolen property, having certain marks indicating ownership or being of such a character and description as would indicate an unlawful possession, might be sufficient to warrant a jury in finding that he obtained it with a guilty knowledge, until it has been shown by competent evidence that he knew these things, he cannot be convicted of knowingly receiving or buying. Facts from which notice would be presumed are not sufficient. Knowledge brought home to the defendant is required before a conviction can be had. The guilty knowledge is the material ingredient of the offense. Gassenheimer v. State, 52 Ala. 313–319. There is no evidence offered by the state tending to prove the scienter, other than the fact that the defendant was a partner in the business, having charge of the office, and that the stolen property, inclosed in barrels, with other junk of a similar character, was found in the storehouse of the firm, which was engaged in buying similar junk in larger quantities from all over three or four states. "Rumors and suspicions may be born of such facts and depend on such inferences, but not the verdict of a jury, which is to stamp dishonor and guilt on the citizen." Gassenheimer's Case, supra. What we have tried to make plain is aptly expressed in the text in 17 R. C. L. p. 73, § 77. "To warrant an inference of guilt, it must further appear that the possession was personal, and that it involved a distinct and conscious assertion of possession by the accused." The same principle is held in People v. Hurley, 60 Cal. 74, 44 Am. Rep. 55; State v. Drew, 179 Mo. 315, 78 S. W. 594, 101 Am. St. Rep. 474. Assuming that the articles found were stolen and were the articles set out in the indictment, the finding of them on the premises of the firm of which defendant was a member, in a place to which many others had free access, without proof of the actual conscious possession of the defendant, discloses only a prima facie constructive possession, and is not such a possession as will justify an inference of guilt by reason thereof. 17 R. C. L. p. 73, § 77.

In addition to the other evidence hereinbefore alluded to, the defendant proved a good character, which in a case of this nature is of vital importance, an evidentiary fact which the law recognizes and stands as a monument for his protection against suspicion which might otherwise be overwhelming.

In passing upon a request by the defendant for the giving of the affirmative charge, the court must consider the entire evidence, both

for the state and for the defendant, and if the evidence is without conflict, it becomes a question for the court. The defendant in this case was entitled to the general affirmative charge, and the trial court erred in refusing to give it as requested. It is but fair to say that in the foregoing conclusion the Attorney General concurs. This being conclusive of the case, it is not necessary to pass upon the other questions presented by the record.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

BROWN, P. J. (dissenting). The defendant is charged by the indictment with the offense of buying, receiving, concealing, or aiding in concealing driving box journal brass, the personal property of the Southern Railway Company, knowing that it had been stolen, and not having the intent to restore it to the owner, the offense denounced by section 7329 of the Code of 1907.

The evidence offered by the state shows that the storehouse of the Southern Railway Company at Avondale, where such brasses were kept by the railway company for use on its locomotives, was broken into on the night of the 21st or 22d of November, 1916. The testimony of the witness Aiken, the master mechanic of the railway company in charge of the Avondale yards, was offered by the state for the purpose of showing that brasses in the storehouse had been taken therefrom on the night of the alleged burglary, and the defendant insists that it clearly appears that the testimony of this witness with respect to such larceny was predicated on hearsay, and for that reason should have been excluded. While the cross-examination of this witness developed the fact that he was not able to state from personal knowledge the exact quantity of brass that was missing from the storeroom after he discovered that it had been burglarized, his testimony as a whole shows that he had such general knowledge of the quantity of brass kept in the storeroom and the manner of its keeping and use that he could state from personal knowledge that a quantity of the brass in the storeroom on the night of the burglary had been taken therefrom, so the several objections to his testimony and motions to exclude it on the grounds stated were not well taken and were properly overruled. Smith v. State, 133 Ala. 145, 31 South. 806, 91 Am. St. Rep. 21.

There is no division of opinion that the evidence of this witness in connection with the other evidence in the case was sufficient to afford an inference to be drawn by the jury that the brasses found in the barrels at defendant's junkyard were stolen from the storeroom of the Southern Railway Company at Avondale. In Smith v. State, supra, a prosecution for larceny, it was said:

"On the other hand, if the evidence affords an inference of the larceny of the goods, then the question of its sufficiency is one for the jury, and it becomes their province to determine whether the corpus delicti has been proven. In such case evidence of possession by the prisoner of goods of the same kind as those charged to have been stolen is competent, and the jury must determine upon the entire evidence not only the question of the doing of the act, but whether committed by the defendant. Indeed, the corpus delicti must often be proven by circumstances. In the case at hand, the owners of the goods charged to have been stolen were wholesale merchants. Garner, one of the partners, swears that meat and lard had been stolen from the storehouse. It is true he could not state definitely when these articles of merchandise were taken, and neither could he identify the meat and lard found in the possession of the defendant as his firm's property, nor could he say that particular lard and meat had been stolen from his storehouse. But he was positive that meat and lard had been stolen prior to the institution of the prosecution against this defendant. On this evidence we are of the opinion that there was some proof tending to establish the corpus delicti, the weight and sufficiency of which was properly left to the jury."

The question on which there is a division of opinion is not as to what the record shows, but as to whether the facts developed on the trial were sufficient to afford an inference that the defendant bought or received the goods or concealed or aided in concealing them with the knowledge that they were stolen. The evidence relative to this question shows that the character of the brasses alleged to have been stolen and which the evidence tends to show were stolen were not on the market for sale as junk. In fact, some of them were new, unused brasses that had been recently placed in the storeroom for use by the railway company in its locomotives. All the brasses stolen were marked with the special mark of the railway company, consisting of the letter S with an arrow through it, and were of a type, as some of the evidence tended to show, used only by the Southern Railway Company, known as the "Merry Widow" brasses. Between 400 and 500 pounds of this brass was found in the defendant's junkyard, and it had been cut and broken up into slugs or chunks, for the purpose of destroying its identity and the marks thereon. The brass, when found, was in the bottom of barrels and kegs under a lot of other junk, and the barrels and kegs had been sealed by placing over the open ends sacks fastened down with hoops driven over them, as if prepared for shipment. These barrels and kegs, as the evidence tends to show, were not marked or tagged when they were discovered by the officers of the law in a search for the stolen brass, and when the barrels were cut open and the contents thereof emptied out, the agent of the railway company identified the brass found in the bottom of these barrels as brass stolen from the storeroom of the Southern Railway Company at Avondale, and the officers took possession of and removed from the defendant's junkyard between 400 and

500 pounds of this brass, some of which was offered in evidence before the jury on the trial of the case.

The barrels were opened and the contents emptied out by the officers of the law, and the brass identified by the agents of the railway company in the presence of the defendant and his star witness, Lipsitz, and the defendant was silent, making no statement as to how this brass came into his possession or upon his junkyard. On the trial the explanation offered by the defendant as to the manner in which this brass came into his possession was that it was a part of two shipments of brass consisting of these several barrels and kegs recently received from Atlanta, Ga., and Tallahassee, Fla., and bought by defendant's partner in business, who was his brother, by wire, sight unseen, and shipped to the firm of which defendant was a member by freight and received and removed from the freight depot by the witness Lipsitz, an employé of the partnership, and that the only connection the defendant had with the shipment and purchase was the payment of the draft accompanying the bills of lading on which it was shipped. As corroborating this evidence, defendant offered two or more bills of lading and freight bills dated prior to and about the time of the larceny from the storeroom of the railway company.

The fact of buying and receiving stolen goods with the knowledge that they had been stolen or concealing them or aiding in their concealment with the knowledge that they have been stolen, in cases of this character, is seldom, if ever, susceptible of direct positive proof, and generally must be proven by circumstantial evidence.

It seems to be well settled that the same rules of evidence applicable to cases of larceny and like offenses relative to the possession by the accused of goods recently stolen are applicable to prosecutions for the offense here charged. State v. Guild, 149 Mo. 370, 50 S. W. 99, 73 Am. St. Rep. 395; Wigmore's Ev. § 153.

In the case of Smith v. State, supra, from which we have quoted, and in which the goods found in the possession of the accused were not identified as the stolen goods, but were merely shown to be of the same character, and where it was shown that when the goods were discovered in the defendant's possession defendant claimed that he had purchased them in due course of business from a man by the name of Pruett, and so testified on the trial, the court held that the fact of the defendant's possession of such goods was admissible as evidence tending to connect him with the offense, and on the evidence the case was one for the jury. It was there said:

"Furthermore, we hold that it was sufficient to authorize the admission by the court of evidence of the possession by defendant of meats and lard of the same kind as that which Garner said was stolen, and that the evidence of the identity was sufficient to be submitted to the jury, when taken in connection with all the other evidence in the case. It follows from what we have said that the defendant was not entitled to be given the general affirmative charge requested by him."

While the explanation of the possession of stolen goods by one accused of stealing them or of receiving them after they were stolen with the knowledge that they were stolen, consistent with innocence, no doubt weakens the probative force of the fact of such possession, yet it does not entirely destroy it, so as to justify an affirmative instruction to acquit, but leaves the case with the jury. Wigmore's Ev. §§ 2491, 2513; People v. Luchetti, 119 Cal. 501, 51 Pac. 707; State v. Lax et al., 71 N. J. Law, 386, 59 Atl. 18. So where the explanation is affected with infirmities, as here, it becomes a question for the jury whether the explanation is well founded in fact and good faith or is fabricated. Smith v. State, supra; Hester v. State, 103 Ala. 83, 15 South. 857; Collins v. State, 33 Ala. 434, 73 Am. Dec. 426; People v. Luchetti, supra; State v. Lax et al., supra.

The fact that the brasses found in the defendant's possession were new, unused brasses, and that this character of stuff was not on the market for sale, that when found they were cut up so as to deface and destroy their identity, that they were placed in the bottom of the barrels under other junk, the fact that the barrels were unmarked, the fact that the barrels were opened in the presence of the defendant and the brass was identified by the owner as the stolen property; and that the defendant was present and remained silent as to how this brass came into his possession or on his junkyard, when it is manifest from the evidence that, if he ever had the bills of lading and freight receipts showing the shipment of these barrels from Atlanta, Ga., and Tallahassee, Fla., to defendant's firm, such receipts and bills of lading were then in his possession, and the fact that he claims that the purchase was made sight unseen, and that he had never seen or inspected any of the junk so purchased, were all infirmities in the explanation tending to show fabrication. Wigmore's Ev. § 1781; Hester v. State, supra, and other authorities supra.

"Whether there be any evidence or not is a question for the judge; whether there is sufficient evidence is a question for the jury." Howard v. State, 108 Ala. 571, 18 South. 813; 1 Greenl. Ev. § 49.

While it is incumbent upon the state to satisfy the jury beyond a reasonable doubt of the existence of every element of the offense charged in the indictment before defendant can be convicted, the case here presented was clearly one for the jury, and the affirmative charge requested by the defendant was properly refused.

Charges 2, 5, 9, 11, and 16 are argumentative and were well refused.

Charges 3, 7, 12, and. 17 pretermit the consideration that the defendant bought or aided in receiving or concealing the property with the knowledge that it was stolen, and was properly refused.

Charges 6 and 14 were covered by the charges given at the instance of the defendant and were properly refused.

Charges 7 and 16 were invasive of the province of the jury and were properly refused.

It is not an element of the burden of proof resting upon the state to show that the defendant had knowledge as to the ownership of the property alleged to have been stolen, and charge 10 was properly refused. If the defendant bought or received or aided in receiving or concealing the property with the knowledge that it was stolen, he was guilty of the offense charged in the indictment, and charges 13 and 15 ignored some of these elements and were properly refused.

Charge 18 is patently bad and was well refused.

The oral charge of the court when considered as a whole embodies a clear statement of the law applicable to the evidence, and the exceptions thereto cannot be sustained.

Under the evidence in the case, the remarks of the solicitor to which exceptions were reserved did not transcend the scope of legitimate argument.

The record is free of reversible error, and the judgment should be affirmed.