[Crim. No. 1036. Second Appellate District, Division One.—February 4, 1924.]

## THE PEOPLE, Respondent, v. J. F. FROEHLICH, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—VERDICT—EVIDENCE.—In this prosecution for grand larceny in the theft of an automobile, the evidence showing unquestionably that the automobile was stolen and that defendant was found riding in the machine with two others two days after the theft, many miles away from where the machine was stolen, coupled with the testimony of the arresting officers showing that, after his arrest and when his companions in his presence accused him of participating in the theft, defendant did not deny the accusation or say anything in reply thereto, except to say to the officers, "Well, I guess you got it on us," was sufficient to justify the jury in rendering a verdict of guilty.

[2] ID.—WEIGHT OF DEFENDANT'S EVIDENCE—PROVINCE OF JURY.—In such prosecution, although the defendant took the stand and told a story, which, if believed by the jury, would have entitled him to a verdict in his favor, it was for the jury to pass upon the truth or falsity of his statement, and, by rendering a verdict adverse to him, it is plain they considered his story a fabrication.

[3] ID.—POSSESSION OF STOLEN PROPERTY—BURDEN OF PROOF—ERRONEOUS INSTRUCTION—ABSENCE OF PREJUDICE.—In such a prosecution, conceding it is error to instruct the jury that if they "believe from the evidence the property was stolen and was seen in the possession of the defendant shortly after being stolen, the failure of the defendant to satisfactorily account for such possession, or to show that such possession was honestly obtained is a circumstance tending to show his guilt of the alleged larceny, and the accused are bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered with other facts tending to establish guilt if the evidence discloses any such," because of the use of the word "satisfactorily,"

such error will not justify a reversal of the verdict of guilty where, in other instructions, the jury is told that the burden of proof is upon the prosecution and defendant cannot be convicted unless they are convinced by the evidence beyond all reasonable doubt that he is guilty of the crime charged, and the evidence in the case is amply sufficient to establish the guilt of defendant.

[4] ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—In a prosecution for grand larceny in the theft of an automobile, a motion for a new trial upon the ground of newly discovered evidence is properly denied where such evidence is not of a character to make it manifest that the case would or should result differently on a new trial; and in this prosecution the trial court properly denied the motion for a new trial upon the ground of newly discovered evidence, as well as upon all other grounds upon which it was based.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order denying a new trial. T. J. Norton, Judge. Affirmed.

The facts are stated in the opinion of the court.

John R. Stowe for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

CURTIS, J.—The appellant with two others, Clyde T. Phillips and Charles E. King, were charged with the crime of grand larceny in the theft of an automobile. The defendant Froehlich was separately tried. He was convicted by a jury and from a judgment sentencing him to imprisonment in the state's prison and an order denying a motion for a new trial, an appeal has been taken. The automobile, which the appellant was charged with stealing, was owned by W. F. Wickham and was left by him standing in front of the Hot Springs Hotel at Paso Robles, San Luis Obispo County, at about half-past 9 o'clock of the evening of February 2, 1923. In about fifteen minutes thereafter the owner returned to the place where he had left his machine and it was gone. It was found at about half-past 7 o'clock on the night of February 4, 1923, in the city of Los Angeles, at which time it was being driven by the defendant Phillips, who, with the appellant and defendant King, was riding in the front seat of the machine. The three defendants were

taken in custody by the police of the city of Los Angeles and thereafter turned over to the authorities of San Luis Obispo County.

The car was a new one and bore no number plates, there being simply an application for a license on the windshield. It was equipped with a bumper in front, a set of side wings, a sun visor and motor-meter. When it was recovered by the authorities in Los Angeles the application for license was gone from the windshield and two 1922 license plates had been put on the car. The side wings, sun visor, and bumper had been removed from the car. The bumper was afterward recovered at Norwalk, about eighteen miles southeast of Los Angeles.

The defendants, Phillips and King, did not testify at the trial. The appellant took the stand in his own behalf and testified that he, with King and Phillips, was in Paso Robles on the night of the theft of the automobile, and that a man by the name of Wilkins employed Phillips to drive the stolen machine from Paso Robles to San Diego, and that Phillips had asked appellant and King to ride with him on the trip; that the three then got into the machine, which was standing in front of the Alexander Hotel, a short distance from the Hot Springs Hotel, and they drove from Paso Robles to Bakersfield and then down to Los Angeles, where they arrived on the morning of the 3d of February. From Los Angeles they drove to Norwalk, where Phillips put the 1922 number plates on the car and left the bumper. They drove around Norwalk and Santa Fe Springs and into Los Angeles once, and possibly twice, before they were arrested on the evening of February 4th.

While the defendants were in the custody of the officers a number of conversations were held between them and the officers. James H. Shafer, one of the officers who made the arrest, testified as follows: "I went out of the room again and brought the defendant and King into the room where officer Boycott and Phillips were. Phillips says, in the presence of the defendant and King, 'You mean to say that you wasn't with me when we got this automobile?' and Froehlich didn't say nothing, just kind of stood there, this man there, Froehlich, I guess it is. 'Didn't you and King and myself go out of the poolroom in Paso Robles and walk around the block looking for a car and you said, "Here is

a car, let's take this one,'' and we got into that car and
drove it south.' When he didn't deny that statement, then
I immediately said, 'Let's all of us go to the jail'; I hadn't
intended that day to put these two fellows in jail because
I had nothing against them and when he said that, 'Isn't
that the truth, that you went with me, you two boys went
with me and you picked this car out and you said, ''There
is a car that looks all right, we can drive that one,'' and
we drove it together,' then I took them over to the station
and locked them up.'' ''Q. Did the defendant here at any
time deny the statement made by Phillips? A. No, sir.
Q. Did he, himself, may any further statement? A. No,
sir, he did not. I might correct that. Later at the sheriff's
office, whether it was Froehlich or King I don't know. They
were practically together within a radius of five feet. One
of them made the statement: 'Well, I guess you got it on
us.' That is all that was said.''

Officer Boycott, who was also present at this conversation,
testified that it was Froehlich who made the remark, ''Well,
I guess you got it on us.'' This officer also testified that
while all three of the defendants were present they told him
that they met in a poolroom at Paso Robles; that they
wanted to go south, but did not know how to get there and
did not want to walk; that they went out to find a car to ride
down in and they came upon the Wickham car in front of
the big hotel in Paso Robles; that they took this car and
started out and they told him they were going to Mexico,
and that Phillips and Froehlich took turns in driving the
car as King was not able to drive. According to the testi-
mony of this officer, Froehlich first told him that ''Phillips
came along in the car between Paso Robles and here [Los
Angeles], and they never saw him before, and he asked
them if they did not want to ride.''

The testimony further shows that neither the appellant
nor any of the defendants had ever seen the man Wilkins
before the night the machine was stolen, nor had any of
them ever heard of him since that time; that a subpoena
for Wilkins to attend the trial had been issued and placed
in the hands of the sheriff for service. The sheriff testified
at the trial that he not only searched for Wilkins in San
Luis Obispo County, but that he also had officers search for
him in the cities of San Francisco, Oakland, Los Angeles,

and San Diego, and that he published a notice in the "San Francisco Examiner" asking for information in regard to Wilkins, but that he had never been able to find Wilkins, nor had he received any information whatever regarding him.

[1] In view of the foregoing statement of facts, it is difficult to understand how the contention can seriously be made that the evidence is insufficient to support the judgment, yet this appears to be the main ground advanced by appellant for a reversal of the judgment. The evidence unquestionably shows that the automobile was stolen. The testimony of the owner upon this point was clear and complete and uncontradicted. The evidence is equally satisfactory that the defendant was found riding in the machine with the two other defendants two days after the theft, many miles away from the place where the machine was stolen. In addition to these facts we have the testimony of the officer, Boycott, that when all three defendants were present they told him that they met in a poolroom at Paso Robles; that they wanted to go south, and that they did not want to walk; that they went out and found this car, got in it and drove away. And furthermore, after the appellant and King had made the statement to the officers in Los Angeles that they were picked up on the highway between Paso Robles and Los Angeles and given a ride by Phillips, the latter accused them, in the presence of the officers, of going with him and picking out the car which was stolen and that the three got in the car and drove away with it, and neither appellant nor King made any denial of this accusation, nor said anything in reply thereto, except that the appellant did say, "Well, I guess you got it on us." This evidence unquestionably justified the jury in rendering the verdict of guilty, and was sufficient to support the judgment of conviction. This evidence was all before the court at the time appellant made his motion to advise the jury to acquit, and justified the court in denying said motion. [2] It is true the appellant took the stand and told a story, which, if believed by the jury, would have entitled him to a verdict in his favor, but it was for the jury to pass upon the truth or falsity of his statement, and by rendering a verdict adverse to him it is plain that they considered his story a fabrication. It was contradicted by statements that he had pre-

viously made to the officers and was so unreal and unreason-
able that we would have been surprised had any intelligent
jury placed any reliance in it. We think the following
language used by the supreme court in the case of *People
v. Luchetti*, 119 Cal. 501 [51 Pac. 707], is applicable to
the case before us: "Appellant contends that having given
a reasonable account of the circumstances attending his
possession of the cow, that it removes the inference of guilt,
and that, therefore, the verdict should have been in his
favor. But whether the account he gave was either true or
reasonable was for the jury to determine, and in such case
we cannot disturb the verdict, unless we can say that his
explanation of his possession was so clearly and evidently
true that the opposite conclusion could only be reached by a
jury under the influence of passion or prejudice. We think
the jury rightly concluded that his story was fabricated,
and, therefore, that he was guilty of the larceny."

[3] The appellant further complains of the giving of the
following instruction: "If the jury believe from the evidence
the property was stolen and was seen in the possession of
the defendant shortly after being stolen, the failure of the
defendant to satisfactorily account for such possession, or
to show that such possession was honestly obtained is a cir-
cumstance tending to show his guilt of the alleged larceny,
and the accused are bound to explain the possession in order
to remove the effect of the possession as a circumstance to be
considered with other facts tending to establish guilt if the
evidence discloses any such." This instruction in all ma-
terial respects is the same as that approved in the case of
*People* v. *Alba*, 52 Cal. App. 603–608 [199 Pac. 894], and
the authorities therein cited, with the exception that instead
of the words "the failure of the defendant to satisfactorily
account for such possession," the instruction approved in
*People* v. *Alba, supra*, contained the words "the failure of
the defendant to account for such possession." Appellant
contends that by the use of the word "satisfactorily" in this
instruction the court committed an error prejudicial to his
rights.

In *People* v. *Roberts*, 122 Cal. 377, 378 [55 Pac. 137, 138],
the court said: "When a jury is told that any particular fact
must be established to their satisfaction, such statement can
only mean that such fact must be established at least by a

preponderance of evidence; yet there is no such burden cast upon a defendant charged with a crime, except in certain particular instances which are in no sense present here." The supreme court reversed this case on account of the erroneous statement of law by the court in such instruction. In view, however, of the fact that in the present action the court further instructed the jury that the burden of proof was upon the prosecution and that the defendant was entitled to the benefit of any reasonable doubt and could not be convicted unless the jury were convinced by the evidence in the case beyond all reasonable doubt that he was guilty of the crime charged, we are of the opinion that the jury were not misled by the instruction complained of. Besides, the case of *People* v. *Roberts, supra,* was decided before the adoption of section 4½ of article VI of our constitution, by the well-known provisions of which courts are directed not to set aside any judgment or grant any new trial on the ground of the misdirection of the jury unless, after an examination of the entire cause, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. We are satisfied that the evidence in this case was amply sufficient to establish the guilt of the defendant beyond all reasonable doubt, and that if the court erred in giving the instruction complained of, that the jury was not misled thereby, nor did any miscarriage of justice result therefrom.

[4] Among the grounds upon which appellant based his motion for a new trial was that of newly discovered evidence. Appellant filed an affidavit, sworn to by himself, in support of this ground of his motion. The affidavit in brief states that the appellant was in the county jail of San Luis Obispo County from the time of his arrest up to the time of his trial; that he was a stranger in said county and was without the financial means necessary for him to make a search for certain witnesses, who, if produced, would have testified in his favor, and that said witnesses were not present at the trial for that reason; that since his conviction he had procured funds sufficient to enable him to make a search for said witnesses and if granted a new trial he would be able to procure said witnesses and have the benefit of their testimony upon a second trial. One of these witnesses, the affidavit sets forth, would testify that he gave appellant a

ride from San Ardo to Paso Robles, in an automobile, on the day that appellant was accused of stealing the machine in question; and that the other of said witnesses would testify that appellant was, on the same night, in and about the poolroom at and after the time the automobile was stolen.

We question very seriously whether this evidence, if it should be produced at a subsequent trial, would materially assist appellant in his defense. Unless such evidence is of a character as to make it manifest that the case would or should result differently on a new trial, the order of the trial court denying the motion will not be disturbed. (*People v. Sing Yow*, 145 Cal. 1–4 [78 Pac. 235].) The testimony of the witness that he gave appellant a ride into Paso Robles on the day the automobile was stolen would not have had any material bearing on the case. All the parties conceded that appellant arrived there on that day, and the particular means employed by him in traveling would not, we believe, have had any great weight with the jury in determining whether he was guilty or innocent of the offense with which he was charged. Nor is there any dispute as to the presence of appellant in the poolroom before the automobile was stolen, so witnesses testifying to this fact could not perceptibly aid defendant. Evidence that he was in the poolroom at and after the machine was stolen might be of material assistance to the defendant. Appellant testified fully as to his presence in the poolroom on the various occasions of the night the car was stolen, and from his testimony the only person that could possibly testify to the fact that the defendant was there at or after the time the machine was stolen was the mysterious and elusive individual, known to the appellant and his codefendants as "Wilkins," but defendant's affidavit failed to show any fact upon which the court could reasonably base a belief that the appellant could secure the attendance of Wilkins at the trial, no matter how long a continuance might be granted. The testimony of the sheriff of San Luis Obispo County showed that he had been exceedingly diligent in his efforts to locate Wilkins and to subpoena him as a witness at the trial, but, as we have heretofore seen, he was unsuccessful in these efforts. From the showing made by the appellant in his affidavit, there is no reasonable probability that the appellant

could succeed where the sheriff had failed. Therefore, we are unable to see how the appellant, if granted a new trial, can expect any material assistance from any of the witnesses referred to in his affidavit. Neither do we believe from the showing made by appellant that the result of a new trial would be any different from that already held.

For this reason we are of the opinion that the trial court properly denied the motion for a new trial upon the ground of newly discovered evidence, as well as upon all other grounds upon which it is based.

The judgment and order denying appellant's motion for a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.