[Crim. No. 1152.  Second Appellate District, Division Two.—January 7, 1925.]

## THE PEOPLE, Respondent, v. CHARLES W. CROTTY, Appellant.

[1] CRIMINAL LAW—POSSESSION OF STOLEN GOODS—LARCENY—EVIDENCE.—Proof of possession of stolen goods is not in itself sufficient evidence upon which to sustain a conviction of one charged with having stolen them, but some other evidence must be produced to connect the accused with the theft; however, such additional connecting evidence may be slight, and if it exists the decision of the jury will not be disturbed.

[2] ID.—FALSE TESTIMONY—CONDUCT INDICATING GUILT—EVIDENCE.—In this prosecution for larceny, the fact that defendant gave false testimony, coupled with the fact that when the police officer took the pocketbook of the complaining witness from defendant the latter threw over the rail of the street-car in which he was riding certain currency and papers which the complaining witness had kept in his pocketbook, justified the jury in believing that defendant took the pocketbook from the complaining witness and that he did not find it on the car as he claimed.

----

(1) 36 **C. J.**, p. 874, n. 13, p. 876, n. 22.    (2) 36 **C. J.**, p. 877, n. 46, p. 914, n. 63.

APPEAL from a judgment of the Superior Court of Los Angeles County.  C. P. Vicini, Judge Presiding.  Affirmed.

The facts are stated in the opinion of the court.

----

1. Possession of recently stolen property as evidence of larceny, note, 12 **L. R. A. (N. S.)** 199.  See, also, 17 **R. C. L.** 71; 15 **Cal. Jur.** 932.

Frank Allendar for Appellant.

U. S. Webb, Attorney-General, John W. Maltman and John L. Flynn, Deputy Attorney-Generals, for Respondent.

CRAIG, J.—Appellant was convicted of grand larceny upon an information which charged that on or about the fourteenth day of May, 1924, in Los Angeles County, California, he did steal, take, and carry away from the person and immediate presence of one Carl Peterson a wallet containing nine dollars in money. The sole ground of this appeal is an alleged insufficiency of evidence to sustain the judgment.

It appears that on said date, at about 6 o'clock in the afternoon, Peterson visited a market on Main Street, in Los Angeles, where he purchased about sixty cents' worth of meat, for which he paid with a ten-dollar bill, and received change in silver which he placed in his pocket, and nine dollars in currency which he inserted in a wallet; the wallet was then placed in his hip pocket, which he buttoned before leaving the market. Peterson then walked to Third Street and over Third Street to Spring Street, where he boarded a north-bound "W" car for his home at Eagle Rock. He testified that the car was somewhat crowded and that he was compelled to stand about half of the way home, but that he finally obtained a seat which he occupied until he arrived at the end of the line, at Annandale Boulevard and Oak Grove Avenue, and then when he alighted he first learned that his wallet was gone. He did not remember having seen anyone on the car whom he knew. He had never known the defendant, and did not know whether or not the latter was at any time on the same car. Peterson also testified that in the wallet with the bills were some postage stamps, a receipt from the Standard Woolen Mills to which was pinned a sample of cloth, and a postoffice registry receipt, all of which were produced upon trial, and identified by him as the property which he lost. On the following day an officer called at Peterson's place of business with the articles above mentioned, and informed him that he had found the man who had them; there was no showing that Peterson had notified the police department of his loss.

One O'Brien, a police officer, testified that he had known the defendant for some four or five years; that he was riding in an automobile with another officer, and noticed the defendant standing in a crowd at the southeast corner of Third and Main Streets, whereupon the officer left the automobile and shadowed the defendant until the latter's arrest. He said that the defendant crossed Main Street and walked in a southerly direction; the officer boarded a south-bound street-car, and as it approached Fourth Street the defendant got on and sat immediately back of the officer; at Fifth and Main Streets both alighted, and the defendant walked westerly to Spring Street where he ran and boarded a north-bound street-car; the officer followed him on the same car to First and Spring Streets, where the defendant crowded through between the passengers and stepped down to the street, and crossed to the westerly side, where he took the first south-bound car. O'Brien boarded this latter car and followed the defendant through to the front open section, where he found the defendant seated with an open purse in his hands; he reached over the defendant's shoulder and took the purse from him, and as he did so the defendant had some papers and currency, which the latter threw over the rail to the street, in the middle of the block. O'Brien arrested him and took him off the car at the next corner, walked back with him and picked up the papers, which proved to be the receipts heretofore mentioned, bearing Peterson's name. The officer testified that he did not know that the defendant had noticed him until he spoke to him on the car and arrested him.

Appellant claimed that he saw O'Brien at Third and Main Streets and knew that the officer was following him from that time on until the arrest; Crotty denied that he was on Fifth Street, but swore that he walked down Main Street to Fourth, thence through to Spring Street, boarded a north-bound car and rode to First and Spring Streets, then walked to Second and Spring Streets; that he had an appointment with one Joe Keating, but had forgotten at which corner he was to meet him, and that when he did not see him he boarded a south-bound car on Spring Street, took a transfer and was going home. He testified that he lived at 2037 East Seventy-eighth Street, with his mother and father; when asked upon cross-examination if he was not living at

3212 South Main Street with a man named Kedion, he stated that it was not his residence, but that he went there frequently and may have been registered at that address. He denied that he had ever seen Peterson before the preliminary examination and claimed that as he took his seat on the car last mentioned he found the wallet in question lying on the floor near his seat, but that he had not opened it, and had not known what it contained until it was produced in the courtroom. Crotty also testified that as he walked back after leaving the car with the officer he saw the latter stop, but did not know that he picked up anything, and he denied that he threw anything from the car except his transfer.

The jury found the defendant guilty; hence they must be assumed to have believed the officer's testimony, and to have branded Crotty's story as untrue. **[1]** In determining whether or not the evidence above recited is sufficient to sustain the verdict, the legal principles applicable are that the proof of possession of stolen goods is not in itself sufficient evidence upon which to sustain a conviction of one charged with having stolen them. (*People* v. *Gibson,* 16 Cal. App. 347 [116 Pac. 987]; *People* v. *Luchetti,* 119 Cal. 501 [51 Pac. 707]; *People* v. *Childs,* 127 Cal. 363 [59 Pac. 768].) Some evidence other than possession of the articles stolen must be produced to connect the accused with the theft; however, such additional connecting evidence may be slight, and if it exists the decision of the jury will not be disturbed. (*People* v. *Vidal,* 121 Cal. 221 [53 Pac. 558]; *People* v. *Cataline,* 54 Cal. App. 36 [200 Pac. 1060]; *People* v. *De Vaughn,* 63 Cal. App. 513 [218 Pac. 1020].) **[2]** The giving by the defendant of false testimony may well have been regarded by the jury as in itself indicative of a consciousness of guilt. (*People* v. *Davenport,* 17 Cal. App. 557 [120 Pac. 451].) Appellant testified that he had seen Keating on the morning of the arrest; that the two had made an appointment to meet on Spring Street just before the former was arrested; and that this man had since called upon him at the jail. However, Keating was not called as a witness to corroborate these statements. If his testimony be true that he saw O'Brien, the jury may have considered this as mitigating against him, and that his reason for boarding the different street-cars was prompted by the fact

that he had robbed Peterson at Third and Main Streets and was attempting to elude the officers. The jury were justified in believing that the defendant threw away the papers and currency when accosted on the car, and this in itself would tend to indicate that he was guilty, and to prove that he had opened the purse and abstracted the contents, which he testified that he did not do.

We think these circumstances were sufficient to warrant the jury's conclusion that the defendant took the pocketbook from Peterson, and that he did not acquire it in the manner in which he claimed, by finding it on the street-car.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 5, 1925.

All the Justices concurred.