[Crim. No. 2342. Second Appellate District, Division Two.—July 3, 1933.]

THE PEOPLE, Respondent, v. DALLAS EGAN et al., Defendants; HOMER D. ROGERS et al., Appellants.

George B. Bush, Gladys Towles Root, Philip C. Farman and William I. O'Shaughnessy for Appellants.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Defendants were tried before a jury on a joint information charging one Dallas Egan and themselves with the crime of murder. Egan was also

charged with four prior convictions and Turcott with one. During the course of the trial Egan changed his plea to "guilty" and the trial proceeded against his co-defendants. The jury returned a verdict of guilty of murder in the first degree as to defendant Rogers, fixing the punishment at life imprisonment with recommendation of leniency. As to Turcott, the jury returned a similar verdict without recommendation of leniency. From the judgments of conviction entered upon said verdicts and from orders denying their respective motions for a new trial each defendant has appealed.

On July 23, 1932, three men entered the Broder jewelry store in Los Angeles and robbed the establishment. During the robbery William J. Kirkpatrick, an elderly man, was shot and killed. The three robbers then left the store and escaped in an automobile with two confederates, one of whom had acted as lookout man, while the other stayed at the wheel of the car while the crime was being perpetrated. Three of the men involved were white, one a negro and the other a Mexican.

Appellant Rogers contends that the court erred (1) in permitting the introduction of evidence of other crimes in which it is urged he did not participate and which it is contended are not connected with or pertinent to the one involved here, (2) in admitting statements of defendant Turcott as to such other crimes, and accusatory statements of one Lamey and defendant Egan in the presence of Rogers, and (3) in denying his motion for a separate trial, and (4) that the evidence is insufficient to justify the verdict.

Appellant Turcott urges (a) that the admission of statements made by him to W. C. Burris was erroneous in that at the time such statements were made this appellant was unable to comprehend them, (b) that the evidence is insufficient to justify the verdict in that excluding "the so-called confession" there is no evidence connecting him with the crime, and that the court erred (c) in admitting such confessions because they were not shown to have been free and voluntary but were obtained by a promise and for a consideration and (d) in admitting testimony as to other crimes without proof of the existence of a conspiracy.

(1), (2) and (4). One witness testified that she was trying to park her car in the vicinity of the jewelry store at the time of the robbery and noticed a "brown car" with "a kind of a rumble seat in the back" parked in front of a radio store near the jewelry store; that it was "moving back and forth", one man at the wheel and another on the sidewalk by the front wheel; that she heard a shot and that three men ran out of the jewelry store and jumped into the brown car; that the man standing on the sidewalk also jumped into the car. Mr. McCormick, proprietor of the radio store, testified that he saw an Oakland cabriolet, "tan color", in front of his store at the time of the robbery, "rocking to and fro from the curb at an angle", with someone in the driver's seat, and that defendant "Rogers was standing there, one hand on the door"; that he heard two shots, rushed out on the sidewalk and saw two men with guns running toward him and the cabriolet; that one of them said "move", whereupon the witness ran into his store; that he saw Rogers jump in the car, following the shooting. In addition to the foregoing there was evidence showing that Egan, who, it will be remembered, was jointly charged with appellants, followed by two men, one white and one colored, entered the jewelry store at the time in question, and with guns compelled the proprietor and his clerk to hold up their hands, "took pillow cases out of their pockets and started to empty jewelry" into them from the showcases; that Kirkpatrick entered and was shot in the head, dying from the effect thereof. At the time of Rogers' arrest a car was found, which he said his father owned but that he, Rogers, "had used it most of the time", and which answered the description of the car used in the robbery. Photographs of this machine were identified by witnesses as a fair representation of the automobile used at that time. There would seem to be sufficient evidence to support the verdict and judgment as to appellant Rogers.

After properly instructing the jury that it was only to be taken as against the defendant Rogers, the court admitted evidence of a statement made by defendant Egan, in Rogers' presence, which was to the effect that Rogers was with them in the jewelry store robbery at which Kirkpatrick was killed, that Rogers' car was used, and that Rogers stayed outside

with the car and was given his share of the proceeds of the robbery, to which statement Rogers said nothing. Against both appellants, a statement made to the police officers by Turcott, in the presence of Rogers, was read in evidence, to the effect that Rogers was not only with them in the robbery of the jewelry store but that he went with them to San Bernardino on a trip when they planned to hold up a bank but did not execute the plan, and in which his car was used as well as a stolen La Salle; that about a week before the jewelry store robbery they held up an office of the Bureau of Water and Power in Los Angeles, using the ever-present Oakland car belonging to Rogers; that Rogers was with them at the time and sat behind the wheel of the car waiting while the holdup was being perpetrated, afterwards taking his "split" of the money, the others present being Egan and Alvarado, the Mexican of the jewelry store robbery. During the making of such charges Rogers "stood mute". Although Turcott confessed to his part in the robbery of the jewelry store which resulted in the killing of Kirkpatrick, he was not identified by any prosecution witness.

A statement made by one Lamey in the presence of Rogers and some officers was also introduced in evidence, in which Lamey said that he met the parties in San Bernardino at the time mentioned in Turcott's statement, having gone there from Los Angeles for that purpose; that he rode in the "Oakland car" in San Bernardino while Rogers was driving it, and that Rogers told him that he, Rogers, drove the car on the jewelry robbery job and that a man was killed. After the statement was made an officer asked Rogers if his name "was Homer Rogers and he said yes". Asked if he wanted to make any statement then, Rogers said he "didn't have any statement to make".

Following the introduction of such statements in evidence, testimony of the robbery of the office of the Los Angeles Gas & Electric Company was admitted, showing that an Oakland car resembling that driven by Rogers was used, one man remaining outside with the automobile during the commission of the crime. Other witnesses identified Egan as one of the robbers. The same is true as to a robbery of the Lakeview Creamery, participated in by four men who drove up in an Oakland car resembling that used by Rogers, three

of them, two identified as Egan and Turcott and the third a Mexican or negro, entering the place and perpetrating the crime while the fourth remained at the wheel of the machine. There is abundant other evidence showing the close association, as well as participation in such events, of Egan, Turcott, Rogers, Alvarado, the Mexican, and Johnson, a negro, from the holdup of the Bureau of Water and Power office to the robbery of the Bank of America branch on August 24, 1930, during which Alvarado and Johnson were killed. The day following the last affair Egan and Turcott were arrested in a room together and Rogers at his home, and pictures were taken of the ever-present Oakland car, identified by various witnesses as being present at different jobs done by various members of the group. Evidence as to the holdup of the branch office of the Bureau of Water and Power, as well as the Bank of America branch, was limited by the court to defendant Turcott alone, although as stated the Oakland car was shown to be present at the Bureau of Water and Power job and the Turcott statement showed Rogers' participation as driver.

With respect to appellant Rogers, so far as the evidence shows, his participation was as lookout man and driver of the car, in the robbery resulting in the murder mentioned here. The question of his motive and intent was material. In addition, this evidence would seem to show the existence of a continuing conspiracy to perpetrate robberies, and kill if necessary. Turcott made the statement that he was as guilty of the killing of Kirkpatrick as Egan, as he would have killed him if Egan had not, and the evidence shows that he shot a man in the robbery of the branch of the Bank of America. They were acts of the same kind and perpetrated with peculiar similarity, which in our opinion sheds light upon the offense here under consideration. The court properly admitted evidence of such other crimes. (*People* v. *Arnold*, 199 Cal. 471, 486 [250 Pac. 168] ; *People* v. *Lapierre*, 205 Cal. 462, 468 [271 Pac. 497] ; *People* v. *Wilson*, 76 Cal. App. 688 [245 Pac. 781].) Furthermore, the court instructed the jurors that evidence of similar offenses was to be considered by them only for the purpose of proving motive or intent on the part of defendants, or a possible conspiracy on their part to commit the crime charged, and

that whether or not such other offenses were committed by either defendant was for their exclusive determination.

In view of the foregoing we see no merit in the contention of appellant Rogers (2) that the court erred in admitting the statements of Turcott and Lamey, which, in addition to showing participation in the crime charged here, may have shown similar participation in other like crimes of violence. Failure to deny such accusatory statements is indicative of "consciousness of guilt on the part of the accused by allowing an imputation opposed to the presumption of innocence to pass unchallenged". (*People* v. *Yeager*, 194 Cal. 452 [229 Pac. 40, 54].)

(3) Parties jointly charged cannot as a matter of right demand separate trials (sec. 1098, Pen. Code). The section cited leaves the matter to the discretion of the court, and we fail to see where there was any abuse thereof. (See *People* v. *Wilson, supra.*)

(a) At the time of Turcott's arrest he was shot, the bullet cutting the head of his penis and passing through his groin, lodged in his hip. At the hospital he made a statement to Officer Burris, which was introduced in evidence against him, in which he admitted that he was in several of the "jobs" already mentioned, as well as others, that he was in the Bank of America holdup and that he shot the banker with the gun found under his pillow at the time of his arrest.

The fact that the statement was made while under arrest did not take away its voluntary character, which the evidence clearly shows, or render it inadmissible; and the evidence showing that he was shot just before, and possibly not in full possession of his faculties, goes to the weight to be given such statement and not to its admissibility. (*People* v. *Miller*, 135 Cal. 69 [67 Pac. 12].) And the court left to the jury the question whether or not he was in such a mental and physical condition as to understand the questions and "knew what he was being asked and what he was saying". We see no error in admitting such statement, nor (c) in admitting the confession which Turcott later made to the officers at the hospital.

Nor do we see any merit in appellant Turcott's contentions (b) that the evidence was insufficient to justify the verdict against him and that the court erred (d) in admit-

ting testimony of other crimes under the relationship shown by the evidence.

Judgments and orders affirmed.

Works, P. J., and Stephens, J., concurred.