[Crim. No. 4652.  In Bank.  Aug. 16, 1946.]

THE PEOPLE, Respondent, v. DAN LEARY et al., Defendants; WILLIAM CRAIN, Appellant.

728

Paul E. Tapley and E. W. Miller for Appellant.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

CARTER, J.—Appellant Crain and his codefendant Dan Leary were charged by information 100192 with the following crimes: First count, the murder in November, 1944, in Los Angeles of Frank Ocello; second count, attempted robbery

of the same victim; third, fourth, and fifth counts, the respective robberies in Los Angeles on December 9, 1944, of Nathan Rack, Joseph B. Mathews, and Ellen Landers. Each defendant was also charged with two prior convictions.

Crain pleaded not guilty and not guilty by reason of insanity, and denied the prior convictions. Leary entered like pleas. The two defendants, represented by separate counsel, were tried jointly. The jury found Crain guilty of murder as charged in the first count of the information and made no recommendation as to penalty. He was found guilty as charged on the other four counts. During the course of the trial he admitted the first but denied the second prior conviction. The jury found the latter prior conviction to be true. On the insanity plea a verdict was returned to the effect that he was sane at the time of the commission of the several offenses. The record does not show what verdicts were rendered as to defendant Leary. An appeal by him is being separately prosecuted.

Another information, 100187, was filed against Crain, Leary, and one Hardeson, charging four robberies committed in Los Angeles on December 15th. These charges were consolidated for trial with those in information 100192, except that a severance was had as to Hardeson. No appeal was taken from the judgments of conviction entered under information 100187, and the evidence in the present transcript relating to those crimes will not be considered.

Both Crain and Leary made motions for new trial, which were denied. Crain was sentenced under count one to pay the extreme penalty, and under the other four counts to serve the term prescribed by law, the latter sentences to run consecutively to each other and concurrently with the sentence under the first count.

On his appeal Crain urges the insufficiency of the evidence to support the verdicts against him. However, he qualifies his contention by the statement that "appellant is . . . not taking the position on this appeal that the evidence demands a reversal of counts IV and V. But the appellant urges that it is insufficient to sustain the verdicts and judgment of conviction as to Count I, the murder, Count II, the attempted robbery of Frank Ocello, and Count III, the robbery of the place of Nathan Rack on December 9th."

Crain, Leary, and Hardeson were acquaintances of many years standing. In 1931 they were in trouble together; Crain

was sent to San Quentin, Leary to reform school, and Hardeson was released on probation. Shortly before the occurrences here involved, Crain, who was out on parole, visited Leary and persuaded him to again embark on a career of crime. Leary is taller than Crain and is afflicted with a continual trembling of parts of the body which markedly increases in times of excitement and is due to the chronic disease of chorea, causing muscular tremors and twitchings. The manner in which the men dressed, the difference in their height, and Leary's affliction were aids to identification, so that in addition to testimony of positive identification, a number of witnesses made partial identifications or testified to bodily resemblances.

The evidence bearing upon the crimes of murder and attempted robbery charged in counts one and two shows in substance the following: On November 15, 1944, an automobile belonging to Leary was parked in an alley which intersects 47th Street near Western Avenue, Los Angeles. Leary was in the driver's seat and Mrs. Leary occupied the back seat. After some conversation at the parked car Crain and Leary went to a liquor store at the corner of 47th Street and Western Avenue. Crain, armed with a .32 caliber revolver, forced the owner of the store, Frank Ocello, into the rear storeroom where Mr. Linden, an agent of the Department of Internal Revenue, was working. Crain fired one shot at the agent and missed. Crain then turned Ocello back into the main store. The agent heard voices in the store, the crashing of bottles and two shots. He ran from the back entrance of the store and encountered Crain, who with Leary was running along 47th Street toward the alley. Crain again fired at the agent and missed. Ocello was in pursuit of Crain and Leary, but turned back crying out that he had been shot. Crain, Leary and Leary's wife escaped in the automobile. Ocello was taken to the hospital, where a .32 caliber bullet was removed from his back and other surgical operations were performed. He died two weeks later from peritonitis resulting from the gunshot wound.

Identification testimony was given and the occurrence was described in part by agent Linden, by Mrs. McDermott, who was washing the window of her upper flat over the alley when the automobile parked almost beneath it, by a Mrs. Bryan who was visiting in the lower flat, by Mr. White, the owner of a paint shop on the southwest corner of the intersection, and by Mrs. Ocello, who conducted a pet shop next door to the paint shop.

On the evening of December 9th the three robberies were committed which are the subject of counts three to five of information 100192. Crain claims to have been so intoxicated at the time as to have no clear recollection of these events. On December 14th Crain's home was searched and a suit of clothes was found which was identified by Nathan Rack as having been taken from his store by Hardeson in the robbery of December 9th.

On the evening of December 14th Crain and Leary escaped from the rear of Leary's home while officers were being admitted at the front door. They climbed into the parked car of a Mr. Gillespie and, by threatening him with guns, forced him to drive them some distance away. On the following day, December 15th, the four robberies were committed for which convictions were had under information 100187, and which netted the perpetrators considerable cash. Crain remembers committing robberies on that day but claims to have been drinking a great deal.

On the evening of the 15th Crain, Leary and Hardeson made a down payment on a LaSalle car bearing license number 08 Z 332. On the 16th a highway patrol officer received a radio message to watch for a LaSalle bearing that number. The car was sighted, the highway blockaded, and several officers shot at the car as it sought to evade the blockade by making a full turn in the road. Leary, slightly wounded, came from behind the driver's seat, and Crain and Hardeson from the other side of the car. Over the embankment on that side the officers found two loaded .38 caliber revolvers.

On the way to the sheriff's office at Newhall, in response to a question by Officer Barrett, "Well, what do you suppose will happen to you now," Crain replied, "Well, they are going to try and pin a murder rap on me; I can smell the gas chamber now." At Newhall Officer Hurst told Crain that Mrs. Leary had been taken into custody on December 14th and on December 15th had made a statement which was reduced to writing, saying among other things that when Crain and Leary returned to the automobile from the liquor store, Crain told her that he had shot Ocello. The officer remarked that he did not think that Mrs. Leary was guilty of anything. Crain agreed, saying "he and Danny [Leary] pulled that caper, and she had no knowledge of it"; that "Leary will hate me for telling you this." Crain also spoke of the fact that several young men were under investigation

by the police, and remarked that if those boys were taken to court on the murder, he was going to give himself up, because "nobody was going to ride his beef." He also said that he shot Mr. Ocello with a .32 revolver which he later threw into the ocean.

The same evening, December 16th, Officer Hurst told Captain Brown, Crain being present, that Crain had confessed the murder to him, and Crain admitted that this was so. After Leary was brought in, Crain asked Captain Brown what kind of a deal he could give them, saying that all they wanted was to beat the gas chamber. He also said Mrs. Leary did not know of their intention to rob the liquor store but that "When we came running out . . . I told her I shot the old guy." Leary, when asked if that was right, nodded his head in the affirmative.

On the trial Crain took the witness stand in behalf of the defense. He admitted a recollection of some discussion about trying to "tap me up on this murder rap," but denied having had any discussion with the officers about a "deal" or about the gas chamber. He testified that at the time of the murder he was still at home recuperating from a truck accident which had occurred the previous February. He recalled being very drunk on December 9th and also committing the robberies on December 15th in a drunken state. He also admitted evading the officers on the evening of December 14th, but in attempted justification said he did not want to be caught carrying two guns, since he was then still on parole. He denied having committed the murder or ever having confessed or admitted to an officer or to anyone else that he did commit it.

It requires but the recital of these facts to show that the record contains sufficient evidence to support the verdicts against Crain on counts one and two of first degree murder and attempted robbery of Ocello. Crain's denial of his confession and of the conversations related by the officers created no more than a conflict between his testimony and theirs, which was a matter for the jury to resolve. The attack made upon the evidence of identification, the claim that the identification made by Linden and White was uncertain, and that it was peculiar that Mrs. Bryan could recognize Crain but not the man with him, are matters which go merely to the credibility of these witnesses and the weight of the evidence. They frankly said that because of the excitement and the fear

engendered by the shooting they could not be explicit as to every detail of the occurrence, but their identification of Crain was positive and unqualified, and their statements were clear and consistent.

■ Crain contends that the trial court erred in admitting in evidence, over the objection of counsel for each defendant, a statement which was in the form of a police reporter's transcript consisting of questions asked Mrs. Leary by Officers Hurst and Brown about 5 p. m. on December 18th, in the presence of Crain, Leary, and some four other officers and her answers thereto. In that statement Mrs. Leary reaffirmed her previous statement of December 15th, which she had read and initialed as correct earlier in the afternoon, and she also answered further questions. At the conclusion of the questioning, the following took place: "Q. (By officer) Bill, you have heard Mrs. Leary's statement, is there anything you want to add to it or anything you want to say? William Crain: I have nothing to say. Q. How about you, Dan? Daniel Leary: All I can say is I don't like it very much. Q. Do you deny it? (To that question there was no answer.) Q. Do you Bill? William Crain: Well, I'm kind of in the middle here, Captain. Q. Whatever you want to do. William Crain: I am going to deny it. Q. All right."

The subject of the admissibility in evidence of an accusatory statement to which a defendant under arrest has made an equivocal reply is reviewed in *People* v. *Simmons,* this day decided (*ante,* p. 699 [172 P.2d 18]). Assuming that under application of the rule there declared in the similar situation here shown it may have been error to admit the accusatory statement, it is clear that the defendant suffered no prejudice in view of his admissions and the overwhelming evidence of his guilt. No error justifying a reversal of the judgment on the counts to which the statement pertains has been shown (Const., art. VI, § 4½).

■ Exception is taken to the admission in evidence of the written statement of December 15th, initialed by Mrs. Leary. When counsel for Crain objected to the offer of this statement in evidence, the court admonished the jury as follows: "Well, so far as the defendant Crain is concerned, of course, that is not evidence against him and cannot be considered against him. It is admissible only as to the defendant Leary, and as to him it is marked 22 in evidence."

The reason for the admonition was that Crain was not present when the statement was shown by Officer Hurst to Leary in a conversation with the latter alone. Crain claims that the admonition could not have cured the prejudice which resulted to his rights as well as those of Leary. It must be assumed, however, that the jury followed the admonition. Accusatory statements, when they are admissible, may be received against a defendant whether he be tried alone or jointly, provided that in the latter case they are properly limited to the defendant concerned. (*People* v. *Yeager,* 194 Cal. 452, 486 [229 P. 40].)

Crain claims to have been prejudiced by the fact that Hardeson was brought into court on several occasions although he was not then on trial. Under information 100187 Crain, Leary and Hardeson were jointly charged with the four robberies committed on December 15th, and a severance of trial was ordered as to Hardeson. While some of the witnesses for the prosecution were testifying, Hardeson was brought into the courtroom for the purpose of being identified as one of the robbers. This was no more prejudicial to Crain than if Hardeson had remained at all times in the courtroom. As he was a participant in some of the crimes, he was properly brought in for identification. No objection to this procedure appears to have been made at the trial.

Criticism is made of the failure of the prosecution to call Mrs. Leary as a witness, thus giving Crain an opportunity to cross-examine her. However, when Mrs. Leary was called to testify for the defense, she was dismissed after a few preliminary questions and answers on grounds of possible self-incrimination.

At the conclusion of the case for the prosecution, Crain's counsel asked for a short continuance, stating that he had every reason to believe that he might recover the murder gun and develop a case of self-defense. The trial court properly denied a continuance on the ground that sufficient proof of its necessity was not made (Pen. Code, § 1050; *People* v. *Franklin,* 41 Cal.App.2d 669 [107 P.2d 500]), and Crain's counsel then said, "Well, I think we are ready to proceed, Your Honor." Nowhere in his defense did Crain claim to have acted in self-defense. His sole defense at the trial was an outright denial of the commission of the murder, and an assertion that he was at home recuperating from an accident when it occurred.

■ It is contended that the evidence is insufficient to establish attempted robbery as charged in count two and that the conviction is based on the erroneous assumption that when a victim is backed into a rear room of his store at the point of a gun the purpose must be to rob him. But the evidence as a whole without serious question establishes facts from which it may be inferred that the purpose of entering the liquor store was to commit the crime of robbery.

■ It is contended that the evidence is insufficient to support a conviction under count three of information 100192 charging the robbery of Nathan Rack of $82 and three suits of clothes. Mr. Rack positively identified two men who entered his tailor shop on December 9th and robbed him. Crain was not one of them. He saw no third person who participated in the crime. Crain denied that he had taken part in it. The strongest evidence tending to connect him with it was the fact that one of the three stolen suits was found by the police in his home.

■ It is established that the mere possession of stolen property is not sufficient to connect an accused with the theft of it. (*People* v. *Childs,* 127 Cal. 363 [59 P. 768]; *People* v. *Luchetti,* 119 Cal. 501 [51 P. 707]; *People* v. *Crotty,* 70 Cal. App. 515 [233 P. 395]; *People* v. *Russell,* 120 Cal.App. 622 [8 P.2d 209].) Some evidence of other inculpatory circumstances must be produced to justify a conviction of the theft of the property (*People* v. *Vidal,* 121 Cal. 221 [53 P. 558]; *People* v. *Bonner,* 5 Cal.App.2d 623 [43 P.2d 343]; *People* v. *Swanson,* 120 Cal.App. 173 [7 P.2d 380]; *People* v. *Cataline,* 54 Cal.App. 36 [200 P. 1060]; *People* v. *Gibson,* 16 Cal.App. 347 [116 P. 987]). In each of the last cited cases the facts showed some corroborative circumstance in addition to the possession of the stolen property. ■ Here there was none when the entire record is considered which may be deemed sufficient to constitute such corroboration on count three. In view of the positive identification of the participants in that robbery and of the failure to prove that Crain was one of them his conviction based on that count must be reversed. As to counts one, two, four and five the evidence is sufficient to support the verdicts and no good reason has been shown for disturbing the judgments thereon.

The judgment on count three of information 100192 is reversed. The judgment on counts one, two, four and five

are affirmed. The order denying a motion for a new trial is affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

SHENK, J.—I concur in the judgment of affirmance but do not agree in the assumption that certain accusatory statements were erroneously admitted in evidence. These statements were properly received.

The trial court admitted in evidence over the objection of counsel for each defendant, as the majority opinion states, a statement of Mrs. Leary consisting of questions asked her by Officers Hurst and Brown about 5 p. m. on December 18th, in the presence of Crain, Leary, and some four other officers. In that statement Mrs. Leary reaffirmed her previous statement of December 15th, which she had read and initialed as correct earlier in the afternoon, and she also answered further questions. At the conclusion of the questioning, the following took place: "Q. (By officer). Bill, you have heard Mrs. Leary's statement, is there anything you want to add to it or anything you want to say? William Crain: I have nothing to say. Q. How about you, Dan? Daniel Leary: All I can say is I don't like it very much. Q. Do you deny it? (To that question there was no answer.) Q. Do you Bill? William Crain: Well, I'm kind of in the middle here, Captain. Q. Whatever you want to do. William Crain: I am going to deny it. Q. All right."

It is the general rule in California, as elsewhere, as pointed out in my concurring opinion in *People* v. *Simmons, ante,* p. 723 [172 P.2d 18], that when a statement tending to incriminate one accused of crime is made in his presence and hearing, and is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as indicative of a consciousness of guilt, or as evidence of his acquiescence in its truth. (See *People* v. *Simmons, supra,* concurring opinion, and cases there cited.)

Here Crain objected to the admission of the reported account of the questioning of Mrs. Leary on December 18th on the ground that it was not a statement, that it was not the best evidence, that it was admitted under an improper instruction to the jury, and that there was a denial by Crain.

Although Mrs. Leary's testimony was in question and answer form, it was a statement containing clear and unmistakable accusations against Crain and Leary. As one example of the accusations, Mrs. Leary told the officers that ''Crain said that he had shot the man and let's get going, so we took off and went home.'' The reaction of Crain to these accusations shows that he fully understood their import; that is, the conditions under which the trial judge was justified in admitting the statement in the first instance were fully met, for the circumstances show that Crain understood the statement and accusations, that they called for a reply, that he was free to make any response he might choose, and that his response was such that the jury might reasonably draw from it an inference of acquiescence or guilty consciousness.

The suggestion that the accusatory statement was not the best evidence because Mrs. Leary attended the trial and her testimony could have been produced, overlooks the fact that the statement was not admitted as evidence of the matters therein referred to, but solely for the purpose of showing the conduct of the accused in response to it. Had Crain promptly denied the accusations, there would have been no reaction to show or admission to introduce, and the statement could not have been received in evidence. But Crain's remarks did not constitute a full and prompt denial. He first said, as hereinbefore quoted, ''I have nothing to say,'' then, ''Well, I'm kind of in the middle here, Captain,'' and lastly, ''I am going to deny it.''

The reply, ''I have nothing to say,'' was not a denial of the accusations (*People* v. *Edwards*, 72 Cal.App. 102, 123 [236 P. 944]; *People* v. *Egan*, 77 Cal.App. 279, 282-3 [246 P. 337]; *People* v. *Egan*, 133 Cal.App. 152, 156, 158 [23 P.2d 1042]).

Crain's second reply, ''Well, I'm kind of in the middle here, Captain,'' was certainly not a denial. It was stronger against him than if he had stood mute, or again said he had no reply to make. Crain's third statement, ''I am going to deny it,'' was not a prompt and full denial. An analogous case is *People* v. *Marineau*, 55 Cal.App.2d 893, 905 [132 P.2d 22], where the defendant, ''when asked if he had anything to add to the [accusatory] statement, replied by a negative sign, thus failing to deny the statement with which he was confronted, though given an opportunity to do so.'' The statement was held to be properly admitted in evidence under instructions to the jury correctly limiting its purpose.

The cases relied upon by Crain are in harmony with the above pronouncements. In *People* v. *Teshara,* 134 Cal. 542, 544 [66 P. 798], the defendant "expressly denied" the accusatory statement; similarly in *People* v. *Lapara,* 181 Cal. 66, 71 [183 P. 545], when confronted with the accusation, "Why did you kill this man . . . ?", the defendant replied, "I did not kill him." In each of these cases the prompt and full denial rendered the accusatory statement inadmissible. The other case cited by Crain, *People* v. *Shellenberger,* 25 Cal.App.2d 402 [77 P.2d 506], is authority only to the effect that where an accusatory statement is addressed to two defendants and only one of them makes a reply, "it does not present a situation under which an occasion exists which would naturally call for a reply from the other defendant."

In the present case the court instructed the jury that "when a defendant, under conditions which fairly afford him an opportunity to reply, stands mute in the face of an accusation of crime, or makes an equivocal reply which is not a direct denial of the charge or accusation, the circumstances of such silence on his part, or his conduct or his failure to make a direct denial may be taken against him as evidence indicating an admission of guilt, depending on the construction you place on his conduct or reply. In such cases the accusatory statement itself is not evidence but the conduct of the accused in respect to such accusation may be considered by you together with the accusatory statement itself for the purpose of determining his reaction thereto. If you find that accusatory statements were made to a defendant and you should find beyond a reasonable doubt that his conduct and reaction thereto were not those of an innocent person charged with crime under like circumstances, then you may consider both the accusation and defendant's reply, otherwise you will totally disregard the entire incident and not consider it for any purpose."

It is asserted that the giving of this instruction was erroneous because the accusatory statements were not put to the defendants in a sufficiently direct manner to call for an affirmation or denial and it is argued that therefore the only effect of the instruction was to confuse the jury. The case of *People* v. *Shellenberger, supra,* 25 Cal.App.2d 402, is cited in support of this claim. In that case it is said at page 407 that a similar instruction should not have been given "because nowhere in the transcript do we find evidence of any

occasion when appellant remained silent in the face of an accusation which would naturally call for a reply." In the present case an entirely different situation is presented. Crain, when confronted with the accusations, made three equivocal replies, none of which was a prompt and full denial. Hence the rule of the Shellenberger case is inapplicable, and the instruction was properly given.

At the request of Leary, an instruction was given to the jury which reads in part as follows: "Evidence concerning any statement made by one defendant as to any alleged offense or offenses, if said statement was made subsequent to the commission of the alleged offense, is not to be considered by you as evidence against the second defendant unless such statement was made in the presence of the second defendant; it is not to be considered by you as evidence of the alleged facts as stated therein, but is admissible solely to show what reaction, if any, the second defendant made to such statement in his presence. The question is whether his said reaction showed or tended to show an admission or confession or a consciousness of guilt. . . ."

Whether this instruction, given at defendant Leary's request, could be complained of by him is not involved in this appeal. But Crain asserts that Leary's reaction to the accusations was "so incomplete, vague and uncertain as to give the jury nothing definite to weigh without a further elucidation . . .," and inasmuch as he, Crain, finally indicated a denial of guilt, the instruction unquestionably "established a prejudicial state of mind with the jury" and was prejudicial to his rights. Leary's reply to the accusations has already been given. No prejudice, as claimed, is shown.

No error on the part of the trial court has been shown.

Spence, J., concurred.