[Crim. No. 1167.   Fourth Dist.   Dec. 19, 1957.]

THE PEOPLE, Respondent, v. TONY MARTINEZ ZUNIGA, Appellant.

David C. Marcus and D. Larry Thorne for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with burglary and with two prior convictions, one for burglary and one for possession of a narcotic. He pleaded not guilty but admitted the prior convictions. A jury found him guilty of burglary in the second degree and he was sentenced to prison. He has appealed from the judgment and from an order denying his motion for a new trial.

The defendant was seen by a witness in a café at Chino on November 11, 1956. On November 14, 1956, a men's store in Chino, with a cleaning establishment in connection called

the "Chino Cleaners & Dyers," was burglarized and a considerable quantity of clothing was taken. At 10 p.m. on that day a police officer checked the doors of this store and found them locked. At 4:15 a.m. on November 15, two officers found a door open. They found clothing disarranged and stacked on the floor and marks on the floor indicating that something made of cloth had been dragged, these marks extending out of the door and into a nearby alley. A broken window indicated the point of entry and on the glass from the broken window they found smudges which appeared to have been made by gloves. Below the window they found a crowbar. A dusty footprint was found on a pair of slacks lying on the floor. This footprint was of a left shoe and an officer measured it and saw definite lines thereon constituting a certain pattern. A shoe later removed from the appellant's foot had a similar pattern and measurements. Suits, slacks, shirts, sweaters, topcoats and luggage were missing from the store.

The officers called the Los Angeles police department describing the *modus operandi* of the burglary, and the Los Angeles officers said they would investigate certain suspects who operated in a similar manner. At 6:30 p.m. on November 15, two Los Angeles officers went to the appellant's home and placed him under arrest. While they were there the phone rang and the appellant picked up the receiver and said "Hello." An officer seated beside the appellant heard someone on the other end of the line say "Where are my clothes." The appellant and the other party then talked in Spanish and although the officer could hear all of the conversation he did not understand Spanish. The officers took appellant to the police station and booked him. Among his papers they found a card on which two phone numbers were written. These phone numbers were those of one Rico, who was well known as a receiver of stolen property. The appellant stated that he did not know how he happened to have Rico's numbers and that he had not seen Rico for a long time. Also, a telephone bill for a Gloria Quesada and marked "Paid" was found among appellant's papers. The officers went to the apartment of Gloria Quesada and in a cupboard of her kitchen found two large canvas bags. They took these bags to the station and the appellant first said that he had never seen the bags, later said that he had left the bags in her apartment but that she knew nothing about them, and still later said that she had asked him to obtain the bags for use as laundry bags. Subsequently, he told a Chino police officer that an-

other person had hired him to haul the bags filled with stolen goods to Five Points, where he unloaded them from his car and placed them in the trunk of Rico's car. Dark markings on these bags indicated that they had been dragged along the ground. In the spare tire well of appellant's automobile a yellow slip of paper bearing the words "Chino Cleaners and Dyers" was found. This slip was one which had been placed on a pair of trousers which were missing from the burglarized building.

The officers talked to the man known as Rico, whose phone numbers appeared on a card taken from the appellant's possession. Their talk related to the merchandise taken at Chino and following this discussion a large part of the property taken was recovered. A tape recording was made of this conversation with Rico, and a Chino officer told the appellant about the recording. The appellant replied that if what the officer told him was true he would testify against Rico and give the police the information they needed. The officer played the recording in the appellant's presence and the appellant identified the speaker's voice as that of Rico, saying that he "would know that voice anywhere." In this recording Rico had stated that the appellant had called him at 2:45 a.m. on November 15; that Rico then met the appellant at Five Points where the appellant told Rico that he "had some stuff he wanted to get rid of" and asked Rico to help him; that Rico had seen the stolen goods and "there were suits, shirts, sweaters, and slacks in these two large bags"; and that this meeting at Five Points must have been on the way back from the burglary. After playing the recording the officer asked the appellant if he had heard the part in which Rico had positively "fingered" him. The appellant answered "Yes," and "I can't deny being there." The appellant then told the officer that it would not help him (appellant) to talk then, that he was in too far to back out, and that he would wait and see how things went at the trial. There was also evidence connecting the appellant with a similar burglary at Oxnard on November 8, 1956.

The appellant took the stand and denied having anything to do with the burglary, denied that he had ever admitted having anything to do with it, denied having ever seen the canvas bags found in the Quesada apartment, and stated that he had never been in Chino since 1955, when he was released from the institution for men located there. He also testified that he had spent the evening of November 14 with Gloria

Quesada, at her home and at bars, from 7 p.m. to 3:30 a.m. the following morning; that he happened to have Rico's telephone number because he had been told to call Rico about a job for a trucking firm; that he had known Rico for some 15 or 20 years; that the telephone call which the officer overheard was from a friend who spoke no English, and was in regard to certain boxing matches; and that at no time did the caller say "Where are my clothes."

The appellant contends that the evidence was insufficient to support the verdict, arguing that the only evidence tending to connect him with this burglary was the "alleged" finding of a yellow ticket in the tire well of his car. Aside from the evidence of the yellow ticket found in his car there was evidence of many other circumstances, including the evidence of his shoe print; the evidence in connection with the bags found in the Quesada apartment, which showed evidence of having been dragged over dirt; the evidence of the telephone call concerning the whereabouts of some clothes; the evidence of a similar crime in Oxnard a few days before; the evidence of the attitude and statements of the appellant in response to accusatory statements; and the evidence that the appellant did not tell the truth with respect to a number of material matters. The evidence justified the inference that the appellant did not tell the truth when he said he had not been in Chino since 1955; when he denied what the officer heard the telephone caller say; and in connection with the bags found in the Quesada apartment where the appellant told four different stories to them, the last one being that he had used the bags to transport stolen goods for a third party. While the evidence was circumstantial, it was convincing and it was sufficient to have been accepted by the jurors as proving guilt beyond a reasonable doubt.

It is contended that the court erred in admitting evidence of another crime, referring to the evidence of a burglary at Oxnard on November 8. There was evidence that a men's clothing store in Oxnard had been burglarized on November 8, entry having been made by breaking the panel out of a door. A crowbar and a pair of gloves were found on the premises and bundles of clothes had been moved to the rear of the store. A private patrol officer found the rear door of the store broken open, saw a parked car about 8 feet from that door, and saw a man enter this car and drive away. He saw the man coming from the vicinity of the rear door, about half way between the building and the car, and he appeared to be in a hurry

and got quickly into the car. The officer had a good look at the man and believed that it was the appellant. The officer wrote down the license number on the car. This car was registered in the name of the appellant's wife, and he had been seen driving it. The appellant refused to answer a question as to whether he had been in Oxnard a few days before November 11, on the ground that his answer might tend to incriminate him. Appellant's connection with the Oxnard burglary was sufficiently shown and there were a number of similarities between the two crimes. Both involved men's clothing stores, a crowbar was found at both locations, smudges from a glove were found at the Chino store and a pair of gloves at the Oxnard store, clothing was stacked about the store in both instances, and there was evidence that bundles of clothing were moved or dragged toward the alley. A common scheme, plan or design was sufficiently shown to make this evidence admissible. (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924] ; *People* v. *Lisenba,* 14 Cal.2d 403 [94 P.2d 569] ; *People* v. *Miller,* 129 Cal.App.2d 305 [276 P.2d 846] ; *People* v. *Keene,* 128 Cal.App.2d 520 [275 P.2d 804].)

██ It is contended that the court erred in admitting evidence as to the contents of the tape recording of the conversation with Rico which was not had in the appellant's presence. This evidence was admissible for the purpose of showing the appellant's response and attitude when confronted with the accusatory statements contained therein. The general rules apply, and there is nothing in the case of *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18], relied on by the appellant, which compels a holding of error or prejudice under the circumstances which here appear.

██ It is further contended in connection with this tape recording that the appellant was denied due process of law in that he had no opportunity to cross-examine Rico. Rico was not a witness, and there was ample opportunity to cross-examine the witness, the officer, who testified to the appellant's statements and reactions in connection with the accusatory statements which were thus brought to his attention by the officer.

██ Finally, it is contended that the court failed to instruct the jury that the accusatory statements received through the contents of the tape recording were not to be considered by the jury as any evidence of the truth or falsity of the things there stated, but were received only for the purpose of judging the conduct of the defendant when con-

fronted with such an accusation, and also failed to instruct the jury that great care and caution should be exercised by them in considering the accusatory statements as contained in the tape recording. The court instructed the jury that "The law of this State admonishes you to view with caution the testimony of any witness which purports to relate to an oral admission of the defendant or an oral confession by him." The court also gave a long instruction fully covering the matter in question, including a statement that evidence of such an accusatory statement is not received for the purpose of proving its truth but only for the purpose of judging the conduct of the accused in the face of it, and that unless the jury should find that the appellant's conduct at the time indicated an admission that the accusatory statement was true the jury should entirely disregard the statement. In addition, while this evidence was being offered and objected to the court made a number of statements to the same effect, which could leave no room for doubt as to why the evidence was being admitted and how it should be considered by the jury. The instructions covered the essential elements, and no error or prejudice appears in this connection.

The judgment and order appealed from are affirmed.

Mussell, J., and Waite, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1958. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.