[Crim. No. 1813.   Fourth Dist.   Oct. 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EMILIO AQUILANTE et al., Defendants and Appellants.

Russell E. Parsons and Edward I. Gritz for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—The defendants were indicted for the offenses of grand theft, a violation of section 487, subdivision 1 of the Penal Code, of burglary, a violation of section 459 of the Penal Code, and of conspiracy, a violation of sections 182, 484-487 of the Penal Code; were charged with the commission of prior offenses; admitted the latter; denied the former; after trial by jury, were found guilty of all offenses; by judgment, were sentenced to imprisonment in the state prison; moved for a new trial, which was denied; appealed from the order of denial prior to the amendment of section 1237 of the Penal Code eliminating such an appeal; and also appealed from the judgment.

The indictment in question followed the May 9, 1961, theft of 36 men's suits from a J. C. Penney store in San Diego

and 16 men's suits from a Montgomery Ward store in the same city. The defendants and another man appeared in the J. C. Penney store on the date in question; four of them engaged the attention of the sales clerks while one of their party, the defendant Romano, was seen in the men's suit section, but the clerks were not able to wait upon him because they were kept busy by the other four; sometime in the course of events Romano obtained a large box from an employee who was emptying trash into a chute in another part of the store; nothing was purchased; after the men left, the department manager noticed that some suits were missing; and an inventory followed which disclosed a loss of 41 suits valued at approximately $1,950. The defendants were identified by both the manager and a sales clerk as four of the men who had been in the store on the occasion in question. On the same day the defendants and another man were seen in the men's suit department of the Montgomery Ward store; the sales clerks therein were kept busy by some of the defendants and by two customers who were making purchases; the defendant Principe was seen carrying a large box toward the back of the store; the defendants Romano and Aquilante tried on coats; the defendant Hoogasian bought a shirt, but no purchases were made by the others who came with him; the next day it was noticed that the suit racks were considerably depleted; and an inventory followed which showed the loss of 19 suits. One of the sales clerks identified all four defendants as being in the men's department of the store; and another sales clerk identified the defendant Hoogasian as one of the five men who came into the store on the day in question. On the evening of this day the defendants Hoogasian and Principe were seen in the vicinity of a Cadillac automobile parked to the rear of a small office building in Los Angeles. They appeared to be taking something from the trunk of the automobile into the building. The defendants Romano and Aquilante joined them and entered into the back of the building. Because the circumstances seemed suspicious, the police were notified; upon arrival they looked through a bathroom window and saw the defendants Hoogasian and Principe removing labels from men's suits; when the police made their presence known by seeking entry, all of the defendants left the back room; Romano and Aquilante were caught while leaving the building; Hoogasian and Principe were found in a front office with the owner of the building; upon obtaining permission from the owner to do so, entry was made into the

back room where men's suits were lying on the floor and on a desk; in the bathroom on the floor were 8 or 10 such suits together with labels and price tags; *in toto* 52 suits were found and of these, it was stipulated, 36 were the property of J. C. Penney Company, and 16 belonged to Montgomery Ward Company.

During the course of the trial, over objection, the People introduced evidence establishing five prior store thefts of men's suits by the defendants, or some of them, which had been effected in a manner similar to that employed to effect the thefts in question. The defendants contend that the admission of this testimony was error. When testifying as witnesses on their own behalf, the defendants denied that they had stolen the suits in question; denied possession thereof at the time of their arrest; offered an alibi in support of a contention that they were not in San Diego on the date of the alleged thefts; and a further alibi as to the reason for being at the building where the stolen suits were recovered at the time they were taken into custody. Upon cross-examination, Romano and Aquilante, over objection, were interrogated concerning the details of certain prior offenses of which they had been convicted. It is contended that the order of the trial court overruling their objection to this examination also was error. Further, the defendants contend that the errors in question constituted a denial of due process of law.

"The general rule, universally recognized, is that in a criminal prosecution the defendant can be tried for no other offense than that which he is charged in the indictment or information; evidence of collateral independent crimes is not admissible. [Citations.] The equally well recognized exceptions to this rule are clearly defined. Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice, or a common plan or scheme." (*People* v. *Albertson*, 23 Cal.2d 550, 576 [145 P.2d 7]; in accord *People* v. *Zankich*, 189 Cal.App.2d 54, 62 [11 Cal.Rptr. 115].)

Stated otherwise, the rule is "that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged." (*People* v. *Peete*, 28 Cal.2d 306, 314-315 [169 P.2d 924]; in accord *People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9]; *People* v. *Zankich*,

*supra,* 189 Cal.App.2d 54, 62.) In the same vein, the court in *People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981], stated:

"It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge." (In accord: *People* v. *Zankich, supra,* 189 Cal.App.2d 54, 63.)

In a later and somewhat qualifying statement of the rule, the California Supreme Court declared that, "If such evidence is determined to be relevant to prove a material fact in issue, it is for the trial court in the exercise of its judicial discretion to determine whether its probative value is outweighed by its possible prejudicial effect and to admit or exclude it accordingly, . . ." *(People* v. *McCaughan,* 49 Cal. 2d 409, 421-422 [317 P.2d 974]; cf. *People* v. *Cavanaugh,* 44 Cal.2d 252, 264 [282 P.2d 53]; *People* v. *Dabb,* 32 Cal.2d 491, 500 [197 P.2d 1].)

Under the foregoing rules, evidence showing a prior offense has been admitted as proof of a common scheme, plan, or design of which the offense charged was a part *(People* v. *Cavanaugh, supra,* 44 Cal.2d 252, 265-266; *People* v. *Peete, supra,* 28 Cal.2d 306, 317; *People* v. *Brown,* 170 Cal.App.2d 80, 82 [338 P.2d 504]; *People* v. *Ross,* 98 Cal.App.2d 805, 809 [221 P.2d 280]; *People* v. *King,* 4 Cal.App.2d 727, 729-731 [41 P.2d 593]—the facts of which are singularly analogous to those in the case at bar; *People* v. *Cosby,* 137 Cal.App. 332, 335 [31 P.2d 218]); or of similarity in the method of operation, i.e., the *modus operandi (People* v. *Johnson,* 195 Cal.App. 2d 825, 827-828 [16 Cal.Rptr. 290]; *People* v. *Zuniga,* 156 Cal. App.2d 298, 302 [319 P.2d 111]; *People* v. *Gregor,* 141 Cal. App.2d 711, 717-718 [297 P.2d 734]; *People* v. *Grimes,* 113 Cal.App.2d 365, 369-372 [248 P.2d 130]; *People* v. *Egan,* 133 Cal.App. 152, 157 [23 P.2d 1042]; *People* v. *McGill,* 82 Cal. App. 98, 102-103 [255 P. 261]); as proof of a continuing conspiracy to commit the offense of which that previously committed and that presently charged are the objects of a common design (*People* v. *Kynette,* 15 Cal.2d 731, 746 [104 P.2d 794]; *People* v. *Lapierre,* 205 Cal. 462, 468, 469 [271 P. 497]; *People* v. *Arnold,* 199 Cal. 471, 486, 488 [250 P. 168]; *People* v. *Ash,* 88 Cal.App.2d 819, 827-828 [199 P.2d 711]; *People* v. *Collier,* 111 Cal.App. 215, 234 [295 P.2d 898]; *People* v. *Egan, supra,* 133 Cal.App. 152, 157; *People* v. *Sampsell,* 104 Cal.App. 431,

438 [286 P. 434]; *People* v. *McGill, supra,* 82 Cal.App. 98, 103; *People* v. *Zimmerman,* 3 Cal.App. 84, 88 [84 P. 446]); and as proof to connect several defendants with the conspiracy charged against them. (*People* v. *Winthrop,* 118 Cal. 85, 90-91 [50 P. 390].)

Proof of similarity in the general plan, scheme, design or mode of operation between that used by a defendant in the commission of a prior offense and that used in the offense with which he is charged, is relevant as a factor which tends to prove that the latter offense in fact was committed by him. (*People* v. *Cavanaugh, supra,* 44 Cal.2d 252, 265-266; *People* v. *Peete, supra,* 28 Cal.2d 306, 319; *People* v. *Thorne,* 10 Cal. 2d 705, 707-708 [76 P.2d 491]; *People* v. *Brown, supra,* 170 Cal.App.2d 80, 83; *People* v. *Burns,* 109 Cal.App.2d 524, 536 [241 P.2d 308, 242 P.2d 9]; *People* v. *Cassandras,* 83 Cal. App.2d 272, 279 [188 P.2d 546]; *People* v. *McGill, supra,* 82 Cal.App. 98, 102-103.)

The evidence to which objection was made related to five prior offenses; in the first of these, Romano and a man named Parrish participated; in the second Aquilante, Romano and a man named Bozyk; in the third all four of the defendants and another unidentified man; in the fourth Principe and a man named Capollo; and in the fifth Aquilante, Hoogasian and Principe; each of the offenses involved the theft of men's suits; each took place in a store or department thereof where there was a limited number of sales clerks; in each the attention of these clerks was engaged by part of the group while one of their number effected the theft; in each a box or some receptacle was used to carry away the stolen articles; and there was a tendency to vary the locale of the operation from city to city. By proper instructions from the court, a consideration of evidence respecting the offenses of a particular defendant was limited to that defendant; a consideration of all such evidence was limited to specifically designated relevant issues; and the jury was cautioned that the evidence was not admitted "to prove distinct offenses or continual criminality."

Under the decisions heretofore noted, this evidence was relevant proof of the existence of a continuing conspiracy and of a common design, plan, scheme and mode of operation engaged in by the defendants; establishes a striking similarity between the prior offenses and the offenses with which the defendants are now charged; and furnishes corroborative proof of their participation in the latter offenses.

We have reviewed the whole record, including the evidence,

and conclude that the trial court did not abuse its discretion in admitting such evidence. (See *People* v. *McMonigle,* 29 Cal.2d 730, 742-743 [177 P.2d 745].)

In support of their contention that the court erred in overruling their objections to cross-examination with respect to the details of prior offenses of which they had been convicted, the defendants cite the decision in *People* v. *Braun,* 14 Cal.2d 1, 6 [92 P.2d 402]. The rule there stated concerns the cross-examination of a defendant with respect to his previous conviction of a felony for the purpose of impeaching his testimony, and limits the extent thereof by prohibiting an inquiry into the details of the crime resulting in such conviction. The cross-examination of the defendants in the case at bar with respect to the details of their prior offenses was directed not only to the impeachment of their testimony but also, as heretofore noted, to other relevant issues in the case. Some of the objections to the questions eliciting details of the prior offenses were made upon the ground of immateriality and others upon the ground that the inquiry was without the scope of the direct examination. In either event the objections were without merit. Under the rules heretofore considered the evidence elicited was relevant. As witnesses, each of the defendants denied participation in the offenses with which he was charged. Evidence respecting his former activity in offenses involving a plan, scheme, design or mode of operation similar to that in which the participants in the offenses charged against him had engaged was relevant to an issue incident to his denial of participation therein; tended to refute such denial; and cross-examination eliciting such did not exceed the scope of his direct examination. (*People* v. *Tarantino,* 45 Cal.2d 590, 599 [290 P.2d 505]; *People* v. *Kerns,* 134 Cal.App.2d 110, 115 [285 P.2d 81].) A defendant's denial of guilt places in issue all matters implicit in his denial, including his general plan, scheme, design and mode of operation. (*People* v. *Tarantino, supra,* 45 Cal.2d 590, 599; *People* v. *Peete, supra,* 28 Cal.2d 306, 319; *People* v. *Thorne, supra,* 10 Cal.2d 705, 707-708; *People* v. *Cassandras, supra,* 83 Cal.App.2d 272, 279.)

The judgment and order denying a motion for a new trial are affirmed.

Griffin, P. J., and Stone, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.